UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WENDELL JOHNSON, | : | |
| | : | |
| | : | Civil No. 22-4453 (BRM) (MAH) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| VICTORIA L. KUHN, ESQ., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is *pro se* plaintiff Wendell Johnson's ("Plaintiff") civil rights complaint ("Complaint"), filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Based on his affidavit of indigence (ECF No. 1-1), the Court previously granted him leave to proceed *in forma pauperis* and ordered the Clerk of the Court to file the Complaint. (ECF No. 2.)

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Complaint is **DISMISSED** in its entirety.

**I. BACKGROUND**

Plaintiff is currently confined at Northern State Prison, in Newark, New Jersey. At the time of the incident alleged in the Complaint, Plaintiff was housed at Garden State Youth Correctional Facility. (*See* ECF No. 1.) Plaintiff brings this civil rights action, pursuant to 24 U.S.C. § 1983, against the following Defendants: (1) Commissioner Victoria L. Kuhn, Esq., (2) Administrator

David Richards, (3) Court Line Officer T. Cortes, and (4) Assistant Superintendent Kenva Collins. (*See id.*)

Plaintiff submits that on April 28, 2022, he was transported from Mercer County Correction Center to Garden State Youth Correctional Facility, where he was ordered to submit to COVID-19 testing. (*Id.* at 7.) The Complaint alleges Defendant Kuhn gave orders forcing inmates to take COVD-19 tests, in violation of Governor Philip Murphy's executive order, which Plaintiff submits only mandated Department of Corrections employees test for COVID-19. (*Id.* at 4, 8.) Plaintiff refused the COVID-19 testing and was transferred to the medical tier, where he was held in "solitary confinement" for thirteen-days in a small hot room. (*Id.* at 7, 12.) Plaintiff submits that since he was the only inmate on this tier and was in a small hot room with no window, this is considered "solitary confinement." (*Id.* at 12.) A disciplinary report was issued, indicating Plaintiff refused a COVID-19 test.[1] (*See* ECF No. 1-2 at 1.)

According to the Complaint, following Plaintiff's thirteen-day hold, he was transported to the "detention" wing for an additional eight days before Defendant Cortes ordered Plaintiff sanctioned. (ECF No. 1 at 7, 13.) It is unclear, but Plaintiff appears to claim he continued to be detained as discipline. (*Id.* at 8.) Plaintiff submits that his disciplinary charge was downgraded to an "on the spot charge," which does not mandate detention. (*Id.*)

On May 17, 2022, Plaintiff filed an appeal to Defendant Richards. (*Id.*) Defendant Richards instructed Defendant Collins to handle Plaintiff's appeal. (*Id.* at 4.) Plaintiff's appeal was denied. (*Id.* at 8.) Plaintiff alleges he was held in "solitary confinement" from April 28, 2022, through May 22, 2022. (*Id.*)

---

[1] The Court accepts as true the factual allegations in the complaint and may consider documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff seeks monetary damages in the sum $500,000,000.00.

## II. LEGAL STANDARD

### A. Standard for a *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**III. DECISION**

**A. Fourteenth Amendment Due Process – COVID-19 Testing**

Plaintiff alleges that upon his arrival at Garden State Youth Correctional Facility he was informed that he was required to take a COVID-19 test. Plaintiff claims that requirement violated his constitutional rights. The Court construes Plaintiff's Complaint as raising a Fourteenth Amendment Due Process right to refuse medical treatment claim.

Prisoners retain a limited substantive due process right to refuse medical treatment and to be informed of the proposed treatment and viable alternatives. *See White v. Napoleon*, 897 F.2d 103, 113 (3d Cir.1990). The scope of the right to refuse treatment is circumscribed, however, by "legitimate countervailing State interests." *Youngberg v. Romeo*, 457 U.S. 307, 319–23 (1982);

*White*, 897 F.2d at 112–13 (noting that "prison authorities have a legitimate interest in maintaining safety and security").

In *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), the Third Circuit held that in evaluating a jail or prison's COVID-19 protocols, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.*

The prison had a legitimate interest in testing incoming prisoners in an effort to prevent the spread of the COVID-19 virus. Courts in this District and others have found testing and quarantining inmates was a legitimate response to the COVID-19 pandemic, and the government had a legitimate interest in preventing the spread of the virus. *See Azcona v. Ellis*, No. 20-8526, 2021 WL 1139843, at *2 (D.N.J. Mar. 25, 2021) (finding quarantining a COVID-19 positive detainee "a legitimate response to an unprecedented situation, undertaken to prevent further spread of the virus"); *Wilcox v. Lancour*, No. 2:20-183, 2021 WL 230113 (W.D. Mich. Jan. 22, 2021) ("Defendants had a legitimate-indeed compelling-governmental interest in testing all prisoners for the presence of the SARS-COV-2 virus [via nasal swab], in order to meet its obligations to control contagion and to protect its other prisoners and staff."); *Webb v. Johnson*, No. 21-3042, 2021 WL 2002721, at *5-8 (D. Neb. May 19, 2021) (finding a prisoner's argument that he has a right to refuse to have his temperature be taken for purposes of COVID-19 testing unsupportable).

Here, the facts alleged in the Complaint show that Plaintiff was an incoming inmate and was required to submit to COVID-19 testing. However, Plaintiff was not forced to take the test. Plaintiff admits in the complaint that he refused the testing. Considering the prison's legitimate

5

interest in protecting the inmates and staff by preventing the spread of the COVID-19 virus, even if Plaintiff was forced to submit to a COVID-19 test, his argument that he has a constitutional right to refuse COVID-19 testing is unsupportable. Plaintiff fails to state a plausible claim for relief for Fourteenth Amendment right to refuse medical treatment. Accordingly, this claim is dismissed without prejudice.

### B. Eighth Amendment Cruel and Unusual Punishment

Plaintiff alleges he was held in isolation in the medical tier for thirteen days following his refusal of the COVID-19 test. Plaintiff argues this isolation violated his Eighth Amendment right to be free from cruel and unusual punishment. (ECF No. 1 at 15.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under the objective prong, the Court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298). However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." *Id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." Wilson, 501 U.S. at 298.

Regarding conditions of confinement claims, "[t]he Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones and it is now settled that 'the

6

treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 676–77 (3d Cir. 2017) (quoting *Farmer*, 511 U.S. at 832). Specifically:

> To establish an Eighth Amendment conditions of confinement claim, [Plaintiff] must show that (1) the deprivation alleged was objectively, 'sufficiently serious' such that the prison officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison officials exhibited a 'deliberate indifference' to his health and safety.

*Id.* at 677 (quoting *Farmer*, 511 U.S. at 834).

Here, even assuming the truth of Plaintiff's allegations, he has not stated a claim that his detention in isolation for thirteen days after refusing to be tested for COVID-19 amounted to an unconstitutional punishment. The prison decision to hold Plaintiff in isolation for a period of time following his arrival at the prison and his refusal to be tested does not amount to punishment considering the prison's interest in preventing the spread of the virus. *See Azcona v. Ellis*, No. 20-8526, 2021 WL 1139843, at *2 (D.N.J. Mar. 25, 2021) ("[T]he decision to place Plaintiff in a quarantine tier after he contracted COVID-19 does not amount to punishment in light of the obvious need to separate inmates with COVID-19 from other inmates to prevent further spread of the virus."); *see also Francisco v. White*, No. 1:20-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020) ("[T]he prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing.")

The Third Circuit reiterated that the "touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Hope*, 972 F.3d at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)). Here, the facts do not indicate that Plaintiff was required to isolate following his refusal to test for COVID-19 as punishment; rather, it appears to be a legitimate response to a deadly pandemic, made in an effort to prevent the spread of the virus. Plaintiff has failed to state a claim that his detention in isolation for thirteen days amounts to punishment and this claim is dismissed without prejudice.

### C. Fourteenth Amendment Due Process – Disciplinary Hearing

The Court construes Plaintiff's complaint as raising a Fourteenth Amendment due process claim regarding his disciplinary hearing. The sequence of events and dates alleged by Plaintiff are somewhat inconsistent, but it appears Plaintiff is claiming that he was denied due process when he was held in "solitary confinement" during his disciplinary proceedings. The Complaint appears to argue that Plaintiff should not have been held in solitary confinement, because his disciplinary charge was downgraded to an "on the spot charge," which does not mandate detention.

The Fourteenth Amendment of the United States Constitution provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." To the extent that plaintiff seeks relief based upon disciplinary confinement, the Due Process Clause does not provide protection against the imposition of discipline, including disciplinary confinement and the loss of various privileges becuase these other forms of discipline do not "impose [] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Torres v. Fauver*, 292 F.3d 141, 150–51 (3d Cir. 2002) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). Confinement in administrative or punitive segregation is

insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Sandin*, 515 U.S. at 486; *see Griffin v. Vaughn*, 112 F.3d 703, 706–07 (3d Cir. 1997). Under *Sandin*, prison disciplinary segregation will implicate a protectable liberty interest only if it dramatically departs, in length of time or otherwise, from basic prison conditions. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); *Griffin*, 112 F.3d at 706–08 (fifteen months in administrative custody is insufficient to trigger a due process violation).

Here, Plaintiff alleges he was held in "solitary confinement" from April 28, 2022, through May 22, 2022, as a sanction for the disciplinary charges. Based on the allegations in Plaintiff's Complaint and the attached disciplinary proceeding documents, it appears that from April 28, 2022, through May 11, 2022, Plaintiff was held in medical isolation following his admission to a new facility and his failure to test for COVID-19. As such, Plaintiff would have been held in "solitary confinement" based on his disciplinary charge from May 12, 2022, through May 22, 2022. However, even if the Court considers Plaintiff's alleged isolation time of April 28, 2022, through May 22, 2022, as pertaining to his disciplinary proceedings, less than one month is an insufficient period of time to trigger a liberty interest. *See Smith*, 293 F.3d at 653; *Griffin* 112 F.3d at 706-08.

In sum, Plaintiff's alleged twenty-five days in administrative confinement does not amount to a liberty interest sufficient to trigger due process protections. Therefore, Plaintiff's procedural due process claims are dismissed without prejudice for failure to state a claim for relief.

## IV. CONCLUSION

For the reasons stated above, the Complaint is dismissed without prejudice in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief

may be granted.[2] Because it is conceivable Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file an amended complaint. An appropriate order follows.

Dated: September 15, 2022

                  */s/ Brian R. Martinotti*
                  **HON. BRIAN R. MARTINOTTI**
                  **UNITED STATES DISTRICT JUDGE**

---

[2] Because the Court dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over any potential state law claims Plaintiff's intended to raise. *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction.")